BEFORE THE SECOND DIVISION, SEPTEMBER 27, 1960

No. 64582.—F. H. Kaysing *v.* United States, protests 260667–K and 313808–K (St. Louis).

LAWRENCE, Judge: In this proceeding, two protests were consolidated for trial. Protest 260667–K relates to an item invoiced as piston and connecting rod assemblies. The merchandise to which protest 313808–K refers is invoiced as finished cylinders.

Upon importation, the collector of customs classified the merchandise as parts of lawnmowers, and duty was assessed thereon at the rate of 30 per centum ad valorem in paragraph 372 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 372).

Plaintiff invokes several claims for lower rates of duty but relies primarily on the claim that the merchandise should be classified as parts of "Internal-combustion engines, carburetor type," having essential electrical features, in paragraph 353 of said act (19 U.S.C. § 1001, par. 353), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and dutiable at the rate of 8¾ per centum ad valorem.

The pertinent text of the statutes under consideration is here set forth:

Paragraph 372 of the Tariff Act of 1930, *supra*:

* * * lawn mowers * * * 30 per centum ad valorem * * *: *Provided,* That parts, not specially provided for, wholly or in chief value of metal or porcelain, or any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts: * * *.

Paragraph 353, as modified, *supra*:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

 Internal-combustion engines,
 carburetor type_____ 8¾% ad val.

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

285

| | |
|---|---|
| Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part (not including X-ray tubes or parts thereof) _____ | The same rate of duty as the articles of which they are parts. |

It is admitted by plaintiff in his brief that the engines for which the imported items are designed are principally used in lawnmowers, but it is claimed that they could be used on other power-driven machines as well.

The case resolves itself into a question whether the articles in dispute should be classified for duty as parts of internal-combustion engines of the carburetor type or as parts of lawnmowers.

Granting that the items in controversy are used exclusively in internal-combustion engines of the carburetor type, an important question arises whether such engines were used only in the manufacture of lawnmowers at the time of importation.

While it is admitted by plaintiff that the imported articles are used exclusively in internal-combustion engines of the carburetor type and become integral, constituent, and essential parts of said engines, and while it is also admitted that said engines were primarily designed for use in lawnmowers, plaintiff contends that such engines have multiple uses—for instance, in what is known as "Snow-Boy" for snow removal and in so-called "Loafers" for "small tractor units."

The Government vigorously contends that at the time the subject merchandise was imported into the United States, in 1954 and 1956, the exclusive use of the importations was in the manufacture of lawnmowers.

The only witness in the case, Wesley C. Pipes, was called by the plaintiff. The direct examination of the witness was obviously designed to establish, if possible, that the engines into which the subject merchandise was incorporated, while primarily installed in the Lawn-Boy lawnmower, *could be* used to activate other devices such as the so-called "Snow-Boy" for snow removal, light trucks, and other machines where a small engine would suffice. He testified, in substance, as follows: For the past 7 years, he held the position of supervisor of the experimental department with a concern known as Lawn-Boy, ultimate consignee of the finished cylinders; that the business of Lawn-Boy was to manufacture lawnmowers and engines. He stated further that Lawn-Boy manufactured other lawn equipment, 4-wheel tractors, and snow machines. He identified the RPM Manufacturing Co., ultimate consignee of the piston and connecting rod assemblies, as "the preceding company, and it is still used as a trade name." apparently meaning it is a companion company to Lawn-Boy.

The witness testified that exhibit 1, which represents the imported piston and connecting rod assemblies, was specifically designed for their Model C-10 Iron Horse Engine, and that, in 1954, 1955, and 1956, that model was designed and used only on a rotary power mower. He knew of no other use for such assemblies at that period of time.

Pipes testified at considerable length concerning his experimental efforts to design and develop a device which could be used as an all-purpose engine. At one point in his testimony, Pipes stated that "the engine *could* be used on most anything. It was primarily and wound up being used on a lawnmower.", [Italics supplied.]

The testimony of Pipes does not, in our opinion, satisfactorily prove that at the time the importations were made the engine above referred to had any commercial use beyond the manufacture of lawnmowers.

The cross-examination of Pipes supports this conclusion.

The confused, conflicting, and uncertain character of the testimony before the court leads to the conclusion that plaintiff has failed to overcome the presumption of correctness attaching to the decision of the collector of customs.

For the stated reasons, we overrule the protests on all grounds.

Judgment will issue accordingly.